UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 26-60008-CIV-SINGHAL

HENRY J. HERNANDEZ TINIGUAR,

      Petitioner,

v.

GARRETT J RIPA, Field Office Director of
Enforcement and Removal Operations,
Miami Field Office, Immigration and
Customs Enforcement; *et al.,*

      Respondents.

_____/

## ORDER

**THIS CAUSE** is before the Court on Petitioner's Petition for Writ of Habeas Corpus (the "**Petition**").  (DE [1]).  The Court has reviewed the Petition (DE [1]); Respondents' Return in Opposition to the Petition for Writ of Habeas Corpus (DE [9]); the parties' supplemental authorities and status reports (DE [14], [15], [18], [19]); argument of counsel at the February 5, 2026, hearing (the "**Hearing**") (DE [16]); and is otherwise fully advised. For the following reasons, the Petition is **DENIED**.

## I.   BACKGROUND.

Petitioner is a Guatemalan citizen who entered the United States without inspection or admission in March 2019.  (DE [1] at ¶¶ 6, 14; [9] at 3).  The government apprehended Petitioner "upon arrival," initiated removal proceedings against him, and then released him into the United States on his own recognizance. (DE [1] at ¶ 6; [9-5] at 2; [9-6] at 3).  Thereafter, Petitioner's father applied for a U-visa and, seeking to extend its privileges to Petitioner, filed a Form I-918 Petition for Qualifying Family Member (the "**I-918 Application**") on Petitioner's behalf.  (DE [1] at ¶ 17).  Because of I-918

Application, the government terminated Petitioner's removal proceedings "[p]ursuant to [p]rosecutorial [d]iscretion."  (DE [9-7] at 2).  Later, the government advised Petitioner's father that because the I-918 Application was "bona fide," Petitioner "warrant[ed] a favorable exercise of discretion to receive employment authorization and deferred action" pending final adjudication of same (the "**Notice**").  (DE [1-2] at 4).

But Petitioner's situation recently took an unfortunate turn when, on September 27, 2025, the government re-detained Petitioner and re-commenced removal proceedings against him.  (DE [9-10] at 2; [9-12] at 2).  On January 14, 2026, a removal order was entered against Petitioner, although that order has been appealed and is not yet final. (DE [15] at ¶ 5; [15-1]).  Because of the removal order, however, the government notified Petitioner that it intended to revoke the deferred action it previously granted him.  (DE [15-1] at 3).  At the time of this Order, the Court is not privy to Petitioner's I-918 Application status or whether his deferred action status was formally revoked.

Petitioner remains detained pending disposition of his appeal and seeks habeas relief in this Court.  He argues he is unlawfully detained because: **(1)** he is not an arriving alien and thus is subject to section 1226 and its more favorable bond provisions; **(2)** the Eastern District of California's class certification in *Maldonado Bautista* binds Respondents here and thus requires this Court to grant relief; **(3)** his detention without an individualized bond hearing to determine flight risk or danger to the community violates due process.  In addition to these arguments, Petitioner argued at the Hearing that the bona fide determination that he was likely to obtain protections stemming from his father's U-visa provides an independent basis for relief.  Petitioner also advised the Court that his brother—who crossed the border, obtained deferred action status, and was apprehended and detained together with Petitioner—likewise petitioned for habeas corpus in the

2

Southern District of Florida and obtained relief. *See* (DE [19]); *See Hernandez Tiniguar v. Ripa*, 26-cv-60002-RS (S.D. Fla. Feb. 10, 2026).

While Petitioner likely (and justifiably) expects the same result, this Court cannot grant relief. While the Court is certain that the judge in Petitioner's brother's case thoughtfully considered that petition and granted relief in accordance with his interpretation of the governing authority, this Court's interpretation of the relevant authority differs. Consequently, the result differs here.

## II.   LEGAL STANDARD.

District courts have authority to grant writs of habeas corpus. 28 U.S.C. § 2241(a). Habeas corpus is fundamentally "a remedy for unlawful executive detention." *Munaf v. Geren,* 553 U.S. 674, 693 (2008) (citation omitted). A writ may be issued to a petitioner who demonstrates that he is being held in custody in violation of the Constitution or federal law. *See* 28 U.S.C. § 2241(c)(3). The court's jurisdiction extends to challenges involving immigration-related detention. *See Zadvydas v. Davis,* 533 U.S. 678, 687 (2001).

## III.   DISCUSSION.

Before addressing Petitioner's arguments in turn, the Court first addresses a basic constitutional feature that animates the Judiciary, preserves our constitutional political process, and safeguards liberty.

### A. Separation of Powers and the Judiciary's Limited Role.

Our Constitution trifurcates federal power between three branches of government—the Legislative, the Executive, and the Judiciary. *See* U.S. CONST. art. I, § 1; *id.* art. II, § 1; *id.* art. III, § 1. Specifically, "[t]o the legislative department has been committed the duty of making laws; to the executive the duty of executing them; and to the judiciary the duty of interpreting and applying them in cases properly brought before

3

the courts." *Patchak v. Zinke*, 583 U.S. 244, 249 (2018) (quoting *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923)).  These powers are "separate."  *Id.* at 250 (citing *INS v. Chadha*, 462 U.S. 919, 946 (1983)).  Consequently, "[e]ach branch 'exercise[s] . . . the powers appropriate to its own department,' and no branch can 'encroach upon the powers confided to the others.'"  *Patchak*, 583 U.S. at 250 (quoting *Kilbourn v. Thompson*, 103 U.S. 168, 191 (1881)).

This diffusion "prevents '[t]he accumulation of all powers, legislative, executive, and judiciary, in the same hands,'" *Patchak*, 583 U.S. at 250 (quoting The Federalist No. 47, p. 301 (C. Rossiter ed. 1961)), and thereby "preserve[s] the liberty of all the people," *Collins v. Yellen*, 594 U.S. 220, 245 (2021).  Moreover, because "there is no liberty if the power of judging be not separated from the legislative and executive powers," "the Framers considered it essential that 'the judiciary remain[ ] truly distinct from both the legislature and the executive.'"  *Stern v. Marshall*, 564 U.S. 462, 483 (2011) (quoting The Federalist No. 78, p. 466 (C. Rossiter ed. 1961)).  Accordingly, just as "[t]he separation of powers . . . prevents Congress from exercising the judicial power," *Patchak*, 583 U.S. at 250 (citing *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 218 (1995)), so too is the Judiciary prevented from exercising legislative power.  The result is that courts are powerless to change the law, even when change is desirable.

True, "this system of division and separation of powers produces conflicts, confusion, and discordance at times . . . ."  *Bowsher*, 478 U.S. at 722.  But "it was deliberately so structured to assure full, vigorous, and open debate on the great issues affecting the people and to provide avenues for the operation of checks on the exercise of governmental power."  *Bowsher*, 478 U.S. at 722.  In other words, the separation of powers healthfully channels the political will to the political branches, and—more

4

specifically, to Congress—when legal amendments are desired.  Questions about legal interpretation, however, are channeled to the Courts.  And "[u]nlike the political branches, the courts . . . by design exercise 'neither Force nor Will, but merely judgment.'"  *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385 (2024) (quoting The Federalist No. 78, at p. 523 (J. Cooke ed. 1961)).  Instead of making law, courts merely "say what the law is." *Loper Bright*, 603 U.S. at 385 (quoting *Marbury v. Madison*, 1 Cranch 137, 177 (1803)).

The Court underscores these basic principles not because the litigants or counsel need to hear them.  Instead, they are emphasized here because the Court increasingly hears argument to the effect that because the law's application leads to undesirable or perhaps even unjust results, the Court must bend—sometimes to the point of breaking— the law to achieve a desirable outcome. This is particularly prevalent as it concerns the enforcement of this country's immigration laws, and even more so the application of 8 U.S.C. sections 1225 and 1226.

Those sections were amended in 1996 and, as the Court understands it, applied in a relatively consistent manner for just less than 30 years.  *See Inspection and Expedited Removal of Aliens*, 62 Fed. Reg. 10312, 10333 (Mar. 6, 1997).  Recently, however, the Executive has changed course and now applies those sections according to their plain language. *See Morales v. Noem*, 2026 WL 236307 (S.D. Fla. Jan. 29, 2026). Unhappy with the result, alien detainees understandably turn to the courts for relief.  But lasting relief can only properly come from **Congress**.  Indeed, in this Court's view, section 1225 and 1226 are plainly written such that any attempt to judicially "fix" them on a case-by-case basis would not only run afoul of the separation of powers, but also encourage Congress to remain inactive whilst leaving the Judiciary holding the bag.  For its part, this

Court has declined—and will continue to decline—to attempt judicial repair of a legislative problem.

### B.  Petitioner is Properly Detained Under Section 1225(b)(2).

Petitioner argues that he falls outside section 1225(b)(2)'s scope because he is not an arriving alien.  But as this Court recently explained in *Morales v. Noem*, --- F. Supp. 3d ---, 2026 WL 236307 (S.D. Fla. Jan. 29. 2026), aliens present in the United States without admission are "applicants for admission" subject to section 1225(b)(2)'s mandatory detention scheme.  While parting ways with the Seventh Circuit's decision in *Castañon-Nava v. Department of Homeland Security*, 161 F.4th 1048 (7th Cir. 2025), this Court's interpretation keeps good company with the Fifth and Eighth circuits' holdings in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026), and *Avila v. Bondi*, --- F.4th ---, 2026 WL 819258 (8th Cir. March 25, 2026).  Because Petitioner is present in the United States without admission, he is an "applicant for admission" subject to Section 1225(b)(2).  Accordingly, the government properly detains Petitioner under Section 1225(b)(2).

### C.  Due Process Does Not Require the Government to Afford Petitioner an Individualized Bond Hearing.

Petitioner submits that the government denies him due process by subjecting him to mandatory detention without making individualized findings as to his flight risk or danger to the community.  While "'the Fifth Amendment entitles aliens to due process of law in deportation proceedings,' . . . detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).  Moreover, "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Id.* at 528.  Although not on

all fours, *Demore* is instructive insofar as it holds that the government need not conduct individualized bond hearings for criminal aliens to combat flight risk. *Id.* at 527–28. Accordingly, the caselaw does not support the notion that due process requires the government to afford aliens individualized bond hearings pending removal, nor has Petitioner pointed the Court to any such authority. Consistent with *Demore*, Petitioner is not entitled to an individualized bond hearing.

### D. *Maldonado Bautista* Does Not Control.

Petitioner submits that "Respondents are parties to *Maldonado Bautista*[ *v. Santacruz*, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025),] and [thus] bound by the Court's declaratory judgment" pursuant to 28 U.S.C. § 2201(a). (DE [1] at ¶ 41). While Petitioner cites 28 U.S.C. section 2201(a) for the accurate proposition that a declaratory judgment "shall have the force and effect of a final judgment," he is factually incorrect that Respondents here were respondents in *Maldonado Bautista*. Indeed, neither Respondent Garrett J. Ripa nor his predecessor in office were parties respondent in *Maldonado Bautista*.

Petitioner does not otherwise explain how the Central District of California's judgment binds **this** Court. Indeed, absent the application of *res judicata* or collateral estoppel, a district court is not bound by another district's judgment. *See Stone v. First Union Corp.*, 371 F.3d 1305, 1310 (11th Cir. 2004) (noting district courts do not bind one another). Although Petitioner does not expressly invoke *res judicata* or collateral estoppel, this Court quickly explains why neither applies.

#### 1. *Different Parties Bar* Res Judicata*'s Application.*

To invoke *res judicata* in the Eleventh Circuit, a litigant must demonstrate, among other things, that "both cases . . . involve the same parties or their privies." *S. River*

7

*Watershed All., Inc. v. Dekalb County, Ga.*, 69 F.4th 809, 815 n.1 (11th Cir. 2023) (quoting *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th Cir. 2001)). But here, the parties are not the same on either side of the "v." because Petitioner was not joined as a petitioner-plaintiff, nor was Garret J. Ripa or his predecessor included as a respondent, in *Maldonado Bautista*. Consequently, *res judicata* does not apply.

### 2. *Offensive Collateral Estoppel is Not Available Against the Government.*

"Collateral estoppel, or issue preclusion, bars relitigation of an issue previously decided in judicial or administrative proceedings if the party against whom the prior decision is asserted had a 'full and fair opportunity' to litigate that issue in an earlier case." *In re Narcisi*, 691 Fed. Appx 606, 609 (11th Cir. 2017) (quoting *In re St. Laurent*, 991 F.2d 672, 675–76 (11th Cir. 1993)). But offensive collateral estoppel is not available against the government. *See Demaree v. Fulton Cnty. Sch. Dist.*, 515 Fed. Appx 859, 863 (11th Cir. 2013) (citing *United States v. Mendoza*, 464 U.S. 154, 162 (1984)); *see also Calderon Lopez v. Lyons*, 2025 WL 3683918, at *12–13 (N.D. Tex. Dec. 19, 2025) (explaining that if *Maldonado Bautista* or other judgments bound district courts across the country, then the "the Government must win everywhere" lest it be enjoined nationwide following "just one [adverse judgment]" (quoting *Trump v. CASA, Inc.*, 606 U.S. 831, 855 (2025))). Consequently, collateral estoppel does not apply.

### E. Petitioner's Deferred Action Does Not Render His Detention Unlawful.

Finally, Petitioner argued during the Hearing that his detention is unlawful to the extent the government determined his I-918 Application was bona fide and granted him deferred action. The Notice contains helpful information. First, the Notice conspicuously states in all bolded, capital letters: "**THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT.**" (DE [1-2] at 4). Second, the Notice advised

Petitioner that he "warrant[ed] a favorable *exercise of discretion* to receive . . . deferred action," that "[d]eferred action is an act of administrative convenience to the government which gives some cases lower priority for removal," and that "USCIS reserves the right to . . . terminate the grant of deferred action at any time . . . ."  (DE [1-2] at 4 (emphasis added)).  The question is whether the Notice, despite its clear language, in fact granted Petitioner a substantive right.

At a high level,

[a] petition for a U visa proceeds through four stages: (1) application is filed pending review, during which time the petitioner is vulnerable to removal but may be granted a discretionary stay of removal; (2) a petition is deemed bona fide but not yet adjudicated, at which time the petitioner may receive . . . deferred action; (3) petitioner is deemed eligible for a U visa and is consequently placed on the waiting list, at which time the petitioner will be granted deferred action or parole . . .; and (4) U visa is issued . . . .

*Castillo v. Parra*, 2025 WL 4092624, at *5 (S.D. Fla. Dec. 1, 2025) (quoting *Arenales-Salgado-De-Oliveira v. Jaddou*, 2024 WL 68291, at *4 (S.D. Fla. Jan. 5, 2024)).  Petitioner advanced to step (2) and was granted deferred action.

"Deferred action status, also known as 'non-priority status,' amounts to, in practical application, a reprieve for deportable aliens. No action (i.e., no deportation) will be taken . . . against an alien having deferred action status."  *Estrada v. Becker*, 917 F.3d 1298, 1305 (11th Cir. 2019) (quoting *Ga. Latino All. for Hum. Rts. v. Governor of Ga.*, 691 F.3d 1250, 1258 n.2 (11th Cir. 2012)); *see also Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 27 (2020) ("[T]he defining feature of deferred action is the decision to defer removal . . . .").  Although deferred action recipients enjoy "a reprieve from potential removal," however, "they are [not] in any way 'lawfully present' under the [INA]."  *Estrada*, 917 F.3d at 1305 (citing *Ga. Latino All.*, 691 F.3d at 1258 n.2).

The precedents are unclear, however, as it concerns deferred action's effect on the government's authority to detain an alien pending pre-removal proceedings. Moreover, the courts in this District are split on that issue. *Compare Castillo v. Parra*, 2025 WL 4092624, at *6 (S.D. Fla. Dec. 1, 2025) ("By detaining Petitioner and seeking to execute a reinstated removal order, ICE appears to be acting contrary to DHS's exercise of discretion and the protections that accompany it.") *with Espinoza-Sorto v. Agudelo*, 2025 WL 3012786, at *6 (S.D. Fla. Oct. 28, 2025) (holding alien granted deferred action could be detained pending execution of his removal order).

Having carefully considered the issue, this Court holds that Petitioner's deferred action status does not render his current detention unlawful.  Petitioner's deferred action is, at bottom, the result of executive discretion and is revocable at any time.  *See* (DE [1-2] at 4).  To the extent it provides him a reprieve from removal unless and until revoked, it does not follow that it altogether halts adverse immigration proceedings.  Indeed, Petitioner maintains no lawful status and—but for executive grace—appears removable. If the government determines to revoke his deferred action and move forward with removal, it can proceed accordingly.  The only remaining question is whether the government must formally revoke Petitioner's deferred action status before initiating pre-removal process.

In the context of this case, the Court answers that question in the negative. Certainly, the Court can conceive of a situation in which detention pending removal of an alien granted deferred action might become unlawful.  For instance, detention might be unlawful if the government does not intend to remove an alien pending expiration of his deferred action and also delays or altogether fails to revoke the alien's deferred action,

10

resulting in an indefinite detention.  *See Zadvydas v. Davis*, 533 U.S. 678 (2001); *Demore v. Kim*, 538 U.S. 510 (2003). But that is not the case here.

Instead—consistent with the government's decision to grant Petitioner a *revocable* and *discretionary* deferred action status—it effectively withdrew same when it proceeded with his removal proceedings.  Then, after obtaining a (non-final) removal order, the government notified Petitioner that it intended to formalize the revocation of his deferred action status based on the removal order.  As far as the Court can tell, Petitioner has not been prejudiced by these proceedings, except perhaps to the extent that he is surprised by the government's decision to change course and exercise its discretion adverse to Petitioner.  But Petitioner was forewarned that his deferred action afforded him only "lower priority for removal" and that the Notice was not an enforceable immigration benefit.  *See* (DE [1-2] at 4).  Consequently, while unfortunate, Petitioner's detention is lawful.

Accordingly, it is hereby

**ORDERED AND ADJUDGED** that the Petition (DE [1]) is **DENIED**.  The Clerk of Court is directed to **CLOSE** this case, **CANCEL** all hearings and deadlines, and **DENY AS MOOT** any pending motions.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 21st day of April 2026.

RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished counsel via CM/ECF